## McPHERSON *v.* SIMMONS.

### Opinion delivered March 27, 1897.

DRAMSHOP KEEPER'S BOND—GAMBLING IN ROOM ATTACHED TO SALOON.—In an action upon the statutory bond of a dramshop keeper to recover sums alleged to have been lost at gaming in a room attached to the dramshop, the jury should be instructed that, in order to hold the defendants liable on the bond, they must find that the dramshop keeper had control of the room where the gaming was carried on, and that such control may be shown by facts and circumstances going to show a collusive renting or a retention of control by a participation in the business.

TRIAL—QUESTION OF FACT.—Whether or not a room on a second floor indirectly opening into the dramshop on the first floor is attached to it is a question of fact for the jury.

Appeal from Jackson Circuit Court.

SAMUEL PEETE, Special Judge.

#### STATEMENT BY THE COURT.

This is a suit by appellee against appellants as principal and sureties on a bond executed under the provisions of section 4870, Sand. & H. Dig., which reads as follows, to wit: "Each applicant for a dramshop or drinking saloon shall present his petition to the county court of the proper county, setting forth the place where such dramshop or drinking saloon is to be kept, verified by his affidavit, and shall enter into bond to the state of Arkansas, in the penal sum of two thousand dollars, conditioned that such applicant will pay all damages that may be occasioned by reason of liquor sold at his

house of business, and shall further pay to any person all such sums of money as may be lost at gaming in his said saloon or dramshop, or any room or building attached thereto under his control, which bond shall have two good securities thereto to be approved of by the court.''

The answer admits that D. W. McPherson & Co., composed of D. W. McPherson and W. R. O'Neal, were dramshop keepers in what was known as the ''Pearl Saloon'' in the town of Newport, and that they, with their sureties, executed the bond sued on; that the defendants had no knowledge of plaintiff having lost the sums of money sued for at gaming in the rooms named by him, but deny that he lost such sums at faro or poker in any room then attached to their saloon and under their control.

It appears from the testimony that D. W. McPherson & Co., for the purpose of keeping a dramshop or drinking saloon therein, rented from one Joseph P. Morrison, the owner, a two-story building (the building in question) for the years 1893 and 1894 (except one room up stairs reserved by Morrison as a sleeping room for himself) for the monthly rental of $110. D. W. McPherson, one of the firm, testifying in explanation, says he tried to rent only one room—the saloon room—which was the main and front room on the ground floor, but the owner would not rent to him unless he would take all the building less the one room reserved as stated, and that thus he was compelled to rent all the building. They made due application to the county court, made the bond sued on, and were granted license to keep said dramshop in said building. There were two rooms on the ground or lower floor of the building—the saloon or main room in front, and fronting on the street, and the rear room used then as a club room, but used at the time as a restaurant, and reaching back to a rear yard.

The upper or second story was cut up into seven or eight smaller rooms, one of these being the room reserved by Morrison for his own use. Two of them were let to cotton buyers, and three of them were let for the month of February, 1894 (that is from the 8th February to the 9th March), for the sum of $30 to one J. W. Hughey, who used the same exclusively for the purpose of gambling and the running of gaming devices. These three rooms were the rear rooms of the upper story, and all of the rooms of that story opened into a hall which extended the length of the building. A stairway led from this hall down to the street in front; a side door opening near the lower landing into the front part or vestibule of the saloon room, which last, McPherson says, was kept closed, and only used for his personal convenience in leaving the saloon at late hours when other doors were locked. Another stairway led from the rear end of the hall above, presumably through a door, down on the outside and rear end of the building to the back yard.

There is evidence showing that plaintiff bet at faro, and also at poker, in the rooms used for gaming, and lost the sums claimed; and that, during his visits there to engage in this pastime, D. W. McPherson, the keeper of the saloon below, personally brought up drinks of liquor for those engaged in the games. The defendants however deny that they had any control over these rooms during the times they were let to Hughey as stated, but that during all the time Hughey had exclusive possession and control of the same; and they say that there was no reservation in the lease to him whereby defendants could assert any control over them, or language to that effect. They say that the three rooms had no furniture in them, other than was furnished by Hughey, and that they were not run in connection with the business of the saloon.

Whether or not, the defendants, McPherson & Co. knew, at the time of renting the rooms to Hughey, that he was going to use them for the purpose of gaming, does not appear from the direct statements of the witnesses, but was left as a question to be determined from facts and circumstances surrounding, and inferences necessarily or reasonably to be drawn therefrom; and so also, whether or not these defendants, after the renting, actively participated, encouraged, or advised the carrying on of the business of unlawful gaming therein.

*M. M. Stuckey* and *J. M. Bell* for appellants.

If appellee is entitled to recover, it is by virtue of sec. 4870, Sand. & H. Dig. 55 Ark. 49. A penal statute should be *strictly construed*, and cannot be extended by implication. 20 Ohio St. 8; 56 Ark. 47; *ib.* 226; 53 *id.* 424; 38 *id.* 521. The rented rooms were not *under the control* of appellants. Wood, Land. & Ten. sec. 538; Tiedeman, Real Prop. sec. 172, 182; 6 Jones, (N. C.) L. 73; 14 Grat. (Va.), 679; 11 Am. & Eng. Enc. Law, 725, note. Nor was the room "attached," in the sense of the statute. 23 Ala. 40; 13 Tex. App. 160; 6 Jones (N. C. L.), 73.

*Jos. W. Phillips* for appellee.

The court properly refused to give instructions 3, 4 and 5 for appellants. Sand. & H. Dig., secs. 4870–3. Appellants still had control of the rooms, as the lease for gambling purposes was void. Wood, Land. & Tenant, sec. 226, 551; 55 Ark. 360. The keeping of a gaming house is a nuisance *per se.* Wood, Nuisances, sec. 49; 13 Ark. 700; 15 *id.* 72; 22 *id.* 252. And this was an injury to the *reversionary* interest, which they could abate. 18 Ark. 259; 12 Am. St. Rep. 891. One cannot shield himself from responsibility for money lost at gaming by leasing to another. 36 Ark. 629. There

was ample evidence to sustain the verdict, and the case comes fairly within the statute. Even if the court's charge was erroneous, the verdict ought to be upheld. 35 S. W. Rep. p. 212.

BUNN, C. J., (after stating the facts.) The only questions in this case are questions of law arising upon the instructions given and refused, and mainly on the instruction numbered 1 given by the court on its own motion, and particularly that part of it relating to the duty and liability of the landlord as applied to the facts of the case.

So far as we can ascertain, there has been but one other case in this court wherein a recovery on a dram-shop keeper's bond was sought, and in that case (*Grant v. Owens*, 55 Ark. 49) only the question as to who was the proper party plaintiff was involved. We have been unable to find a like case adjudicated in other jurisdictions. Hence we are left to deduce the principles from decisions of analogous cases arising under statutes of similar objects and meaning; and it is thought that, for all practicable purposes, statutes denouncing penalties upon landlords in cases of rooms or buildings used for illicit traffic in intoxicating liquors may be regarded as strictly analogous to cases arising, as this one does, on the laws against gaming, in so far as the particular question of the relation, duties, and liability of the landlord are concerned.

Liability on bond of dramshop keeper.

Black, in his work on "Intoxicating Liquors," sec. 382, says: "Unless the statute expressly declares the contrary, the owner of premises upon which liquor is unlawfully kept for sale is not guilty of an offense if he leased the premises for a lawful purpose, and did not affirmatively assent to such unlawful use, and he is not bound to interfere and invoke the law when he subsequently finds that the tenant is making such unlawful

use of the premises; for the mere failure to prevent, or attempt to prevent, the illegal keeping or sale of liquor does not subject him to the penalties of the statute. But in several of the states the statutes are such as to impose a responsibility upon the landlord, when the tenant unlawfully keeps or sells liquor, if he leased the premises for that purpose, or if, with knowledge of the fact, he authorizes, suffers or permits the unlawful acts of the tenant. In regard to the bringing home such knowledge to the lessor, it is said that knowledge sufficient to excite the suspicion of a prudent man, and put him upon inquiry, is equivalent to knowledge of the ultimate fact. And it is not essential to show that the lessor witnessed, or had knowledge of the particular sales upon which the tenant was convicted. It is enough to allege and prove that the lessor had knowingly permitted the occupant to use the premises for purposes violative of the liquor law, when he might have prevented it. Hence, to convict one under these statutes, it is essential that he should have had such control over the property as to be in a position to prevent or stop the illegal acts of the tenant. For this reason, one to whom property has been conveyed by deed absolute in form, but in fact a mortgage, and who has neither the possession nor right of possession, cannot be guilty of permitting the premises to be used for the maintenance of a liquor nuisance. So a lessor cannot be convicted, unless the lease reserves his control of the building, although the same statute provides that the owner may, in cases of the kind, recover possession by entry or action."

Our statute (Sand. & H. Dig., sec. 4881) imposing penalties upon landlords for the illicit or clandestine sale of liquors on their premises was construed by this court in *Crocker* v. *State*, 49 Ark. 60. In that case the lower court had refused to instruct the jury, in effect, that the defendant could not be convicted without proof that he

knew, at the time of leasing, that Jones was going to engage in the clandestine sale of intoxicating liquors, but charged the jury, in effect, that, if the tenant used the premises for an illicit purpose, it was the right and duty of the landlord to put an end to the lease, and that his failure to take active measures to stop the traffic, after he had knowledge of it, was allowing the spirits to be sold, within the meaning of the statute.

The statute (Sand. & H. Dig., sec. 4881) under which that prosecution was had, like the statute under which this suit was brought, only fixed liability on the landlord where it was shown by the facts and circumstances that he retained or had control of the premises (in this case it must be the rooms) where the unlawful business was carried on. Moreover, under that statute, it being a criminal statute, all participants in the selling of the liquor are subject to indictment, while under the statute now under consideration the landlord is liable on his bond only where it is shown in some way he had a control over the rooms, and not merely because he participated. In commenting on the action of the lower court in that case (*Crocker* v. *State*) this court said: "But the court went too far in instructing the jury that the mere non-interference of the landlord, after he became aware that the tenant was violating the law, involved him in the guilt of his tenant. The enforcement of a law rests primarily upon the officers and the courts. The law is not so unreasonable as to require the private citizen to embroil himself in personal difficulties, contentions and law suits for the public good."

In the case of *State* v. *Keisler*, 6 Jones (N. C.), 75, a landlord was indicted for permitting gaming in a room of his tavern which had been let by the landlord to a shoemaker for the purpose of his trade. The question there turned on the question whether or not the landlord had control of the shop at the time the gambling

was engaged in.　A judgment of guilty was entered by consent, and the case appealed to the supreme court, where the consent judgment was reversed for failure of proof that the landlord had control of the room, but in conclusion the court said: "Had that (room) or any other part of the tavern been let, by collusion, for the purpose of a gaming establishment, then it might not have been protected from the operation of the statute, and both the landlord and the players and abetters might have been indicted." That ruling is applicable to the present case in so far only as it declares that a collusive renting for the unlawful purpose is a circumstance tending to show that the landlord, in fact, never parted in good faith with the control of the room.

Without desiring to express an opinion as to the evidence, or as to the weight of evidence in this case, we are free to say that on a question of a sufficiency or insufficiency of evidence to support the verdict, and that only, we would not disturb the verdict of the jury; for the jury may well have found from the facts and circumstances in evidence that the defendants (dramshop keepers), as landlords, knew at the time of the renting for what purpose Hughey was going to use the rooms, and that the purpose was unlawful gaming; and further, from the facts and circumstances, the jury may have found that, after being informed of the purpose for which the rooms were being used, they participated with Hughey in the unlawful business therein, to the extent and in such a manner as to show that they had an interest in the business other than that of mere players at the games, and so as to show they were exercising in that way a certain control of the rooms, either solely or jointly with Hughey. At the same time, we are unable to say that the jury could not have found otherwise in any event. Therefore, this is hardly a case in which the verdict of the jury and judgment thereon ought to

be sustained, notwitstanding the instructions were erroneous as material principles of law.

The instructions given by the lower court on its own motion should have pointedly told the jury that, in order to hold the defendants liable on the bond, they must find from the evidence that the dramshop keepers had control of the rooms where the gaming was carried on, and that this may be shown by the facts and circumstances in evidence going to show a collusive renting or a retention of control by a participation in the business, as we have stated. Failing to so instruct the jury, they were not properly instructed, and the error was fatal.

The defendant asked instructions numbered 3, 4 and 5, and all were refused by the court, and this is made ground for a new trial. By number 3 the defendants sought to have the court declare to the jury that, by reason of the relative situation of the three rooms to the saloon room, and also by reason of the fact that the three rooms were not adapted to the dramshop or drinking saloon business, the same were not attached to the saloon or bar room. The instruction number 4 simply declares an abstract proposition of law governing in ordinary cases between landlord and tenant, and the same may be said of number 5. All three were properly refused by the court.

Whether the rooms were attached to the saloon part of the building was a question of fact to be determined upon the evidence, and there is nothing in the conformation of the building to preclude the idea of these rooms being attached, in the meaning of the statute; and this fact of being attached does not altogether rest upon the manner of ingress and egress to and from the rooms, and between them and the saloon room. In the physical sense, the rooms were attached to and were really a part of the building, and the saloon or bar-room had the same relation to the building, and it is shown how one could

As to whether room was attached to saloon.

be entered from the other, and we think this question was submitted to the jury in the instruction given by the court.

For the error in the instruction given by the court, as suggested above, as regards the control of the room by the landlord, the judgment is reversed, with instructions to proceed not inconsistently with this opinion.